Patrick McGINN and Frances McGinn, husband and wife, Appellants,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., and Mark S. Hengesteg, Appellees.

No. 83–1829.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1984.

Decided June 22, 1984.

Dorsey & Whitney, James B. Vessey, Perry M. Wilson, Minneapolis, Minn., for appellants.

Before BRIGHT, ARNOLD and FAGG, Circuit Judges.

ARNOLD, Circuit Judge.

Patrick and Frances McGinn brought this action against Merrill Lynch, Pierce, Fenner & Smith, Inc., and one of its brokers. The principal theory of recovery asserted was that defendants had "churned" the plaintiffs' commodities futures account by engaging in excessive trading in order to generate commissions—a violation of Section 4b(A) of the Commodity Exchange Act, 7 U.S.C. § 6b(A). The jury returned a verdict for plaintiffs in the amount of $17,505, representing commissions on transactions found to be "churned." Following the trial, the Court held that defendant Merrill Lynch was entitled to be paid the closing

debit balance in the plaintiffs' accounts, $72,612.22. Judgment was accordingly entered against plaintiffs in the net amount of $55,107.22.

Plaintiffs appeal, claiming (1) that the jury should have been allowed to award damages for trading losses in the accounts, as well as for excessive commissions; (2) that their pendent claim for breach of fiduciary duty under the common law of Minnesota should have been submitted to the jury, thus making them eligible for an award of punitive damages; and (3) that Merrill Lynch's counterclaim for the closing debit balance in the accounts should have been submitted to the jury, instead of being decided in defendant's favor as a matter of law, on motion for directed verdict.

We affirm in part, reverse in part, and remand for a new trial, subject to certain conditions.

## I.

Patrick McGinn lives in Chisholm, Minnesota, and has operated a coin and stamp business for about 30 years. On May 16, 1979, McGinn opened an individual commodities account at Merrill Lynch's St. Paul office by depositing $10,000. In mid-June, McGinn closed his individual account and opened a joint account with his wife. Most of the trading in both accounts consisted of silver futures on the Chicago Board of Trade, and most of these trades were "day trades," meaning that the contracts were bought and sold on the same day. In total, trading took place in both accounts on 24 days between May and August. As a result of this trading, plaintiffs claim that Merrill Lynch has received approximately $30,000 in commissions and fees, and that they have lost $71,690 in cash paid in and an additional $72,612.22, the amount of the stipulated debit balance. This debit stemmed mainly from the purchase and sale of silver contracts at the end of July and the first part of August, the last trades in the joint account.

Plaintiffs then brought suit and, as indicated above, obtained a jury verdict of $17,505.00 for the value of commissions earned by churning the accounts. The jury evidently found that only some of the trades were churned. It did not award the full $30,000 of commissions that plaintiffs paid to Merrill Lynch. It awarded $13,655 for excessive commissions in the individual account and $3,850 for excessive commissions in the joint account. The District Court dismissed the plaintiffs' claim for breach of fiduciary duty under state law and denied plaintiffs' request for a punitive damages instruction. In addition, the court granted Merrill Lynch's motion for a directed verdict on its counterclaim for the stipulated account debit of $72,612.22. Defendants have not cross-appealed. We thus take as a given the jury's finding that they were guilty of some churning, and that plaintiffs were entitled to be repaid commissions charged on certain transactions found to amount to churning.

## II. Damages Available for Churning

 The plaintiffs submitted a jury instruction on churning damages which stated as follows:

> If you find that the McGinns are entitled to recover damages, you are to award them an amount of money which will fairly compensate them for the harm caused them by Merrill Lynch, giving consideration to the losses shown by the evidence to have resulted from the wrongful conduct of Merrill Lynch.

The District Court refused this instruction and instead used the defendants' proposed instruction. The defendants' instruction limited damages for churning to the dollar amount of commissions charged to the account for trades amounting to churning.[1]

---

**1.** This instruction assumes that the jury can determine which individual transactions were churned. Many courts and commentators have argued that churning should be treated as an all or nothing affair, on the theory that there is no way to single out individual transactions which were churned because the excessiveness of trades must be determined by examining all the activity in an account. See, *e.g., Fey v. Walston & Co.*, 493 F.2d 1036, 1050 (7th Cir.1974); *Russo v. Bache Halsey Stuart Shields, Inc.*, 554 F.Supp. 613, 617 (N.D.Ill.1982); *Hecht v. Harris, Upham*

Plaintiffs argue that the District Court erred in refusing to allow the jury to consider damages for trading losses resulting from the trades that were churned. We agree.

Commentators and courts alike have increasingly recognized that two distinct types of losses can result from churning: (1) loss of commissions, interest, and fees paid by the customer; (2) loss of the value of the account. See, *e.g.*, *Miley v. Oppenheimer & Co.*, 637 F.2d 318, 326 (5th Cir. Unit A 1981); *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 49–50 (2d Cir.) *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *See generally* Note, *Churning by Securities Dealers*, 80 Harv. L.Rev. 869, 883–85 (1967); Brodsky, *Measuring Damages in Churning and Suitability Cases*, 6 Sec.Reg.L.J. 157 (1978). In sum, excessive trading can not only create unjustified commissions, but also cause losses to a customer's account that would not have occurred if the account had not been churned.

Defendants agree that "out-of-pocket" damages should generally be allowed, but argue that the plaintiffs failed to present sufficient evidence for a reasonable jury to award such damages here. They argue that it was necessary for plaintiffs to call an expert witness to prove the damages that resulted from churned trades. We hold that the plaintiffs' evidence was sufficient to submit the issue to the jury and that damages need not be proved by expert testimony. Plaintiffs introduced into evidence each of the Merrill Lynch statements of purchase and sale that chronicle the dates and amounts of trading. These sheets indicate the net profit or loss associated with the various trades. Plaintiffs also introduced two exhibits which summarized the commissions, fees, and losses shown on the statements. We believe that these sheets furnish proof adequate to make a jury issue of the losses associated with the trades they indicate. Defendants indeed have not suggested any specific reason why these statements do not accurately reflect the losses associated with the trades. Defendants might, of course, argue to the jury that only part of the losses resulted from churning, but courts in churning cases have repeatedly stressed that some uncertainty in damages should not work to bar a plaintiff from recovering from a proved wrongdoer. *E.g.*, *Karlen v. Ray E. Friedman & Co. Commodities*, 688 F.2d 1193, 1202 (8th Cir. 1982); *Miley, supra*, 637 F.2d at 327–28; *Fey v. Walston & Co.*, 493 F.2d 1036, 1055 (7th Cir.1974).

Having held that an instruction should have been given allowing for recovery of out-of-pocket losses, we must now determine whether it is necessary to retry this case in order to determine the amount of such losses. Plaintiffs contend it is not necessary to do so because the losses corresponding to commissions awarded can be accurately determined. We do not share the plaintiffs' confidence. Here the jury was not given any special interrogatories

& Co., 283 F.Supp. 417, 435 (N.D.Cal.1968), *modified in part and aff'd*, 430 F.2d 1202 (9th Cir.1970); Note, *Churning by Securities Dealers*, 80 Harv.L.Rev. 869, 870, 878–79 (1967); Poser, *Options Account Fraud: Securities Churning in a New Context*, 39 Bus.Law. 571, 577 (1984). *Cf. Karlen v. Ray E. Friedman & Co. Commodities*, 688 F.2d 1193, 1201–02 (8th Cir.1982) (transactions are complicated, so jury has latitude in determining damages and defendant cannot complain of difficulty of exact computation).

Plaintiffs do not claim that the District Court erred in using the single-transaction approach, and we think this approach is workable. In all churning cases the jury must determine the point at which trading becomes excessive in light of the investor's goals and resources. In doing so, they might use a number of mathematical comparisons such as the turnover rate or the ratio of commissions to investment, see Note, *Churning by Securities Dealers, supra*, 80 Harv.L.Rev. at 874–78, but in any event, the trading must become excessive at some point. The trades which break that threshold are by definition churned. Further, the trades which are excessive because of their size or some other circumstances in many cases can be singled out. Aside from its workability, this approach has the advantage of preventing a plaintiff from recovering a windfall for trades that were not churned. There may be cases where an all-or-nothing analysis is appropriate, but here the evidence fit the single-transaction approach adopted by the District Court.

that would indicate which specific commissions had been churned, nor did the plaintiffs request such interrogatories. In the absence of such interrogatories we cannot say with assurance what losses, if any, the jury would have awarded. As the defendants point out, in the joint account plaintiffs were charged three commissions for $1,925. It is not possible to tell which of these three commissions the jury found had been churned, although we can infer from the jury's award of $3,850 that two of them were churned. In the individual account the jury awarded commissions for $13,655, yet the commissions for all the trades that resulted in losses in this account add up to slightly over $11,000, leaving one to conclude that the jury awarded commissions for some of the trades that resulted in gains. From this it is impossible to tell which of the commissions the jury found were churned and which were not. If damages for trading losses are to be awarded, a new trial will have to be held.

### III. Breach of Fiduciary Duty under State Law

Plaintiffs assert that a state common law cause of action exists for churning based on the fiduciary duty owed by the broker to the customer. They cite several cases where courts have so indicated. *Mihara v. Dean Witter & Co.*, 619 F.2d 814, 822 (9th Cir.1980) ("the account executive has a duty not to place his interests over those of his client by generating commissions through excessive unwarranted trading"); *Miley, supra,* 637 F.2d at 324 ("upon proving the three requisite elements of a federal securities law churning violation, the investor will, in most or perhaps all cases, be entitled to hold the broker liable under a pendent state claim for breach of fiduciary duty"); *Moscarelli v. Stamm,* 288 F.Supp. 453, 457 (E.D.N.Y.1968) (churning "on the part of the broker provides an action for breach of trust under common law principles").

In response, defendants assert that no such action would lie unless the plaintiffs were able to prove a special agreement between them and Merrill Lynch, going

beyond the normal broker-customer relationship. For this contention they rely on *Rude v. Larson,* 296 Minn. 518, 207 N.W.2d 709 (1973) (per curiam). In *Rude,* the plaintiff sought damages for claimed losses in the sale and purchase of stock resulting from the negligence of the defendant broker. The jury found the defendant not negligent and the plaintiff contributorily negligent. In upholding this finding, the Minnesota Supreme Court stated:

> Absent a special agreement to the contrary, a licensed broker owes his customer only the duty to exercise due care in executing all instructions expressly given to him by the principal. He is not a guarantor or insurer against loss sustained by his customer.

*Id.* at 519–20, 207 N.W.2d at 711 (footnote and citations omitted).

This statement, relied on by the District Court, does support defendants' position. Plaintiffs argue that churning is a species of fraud, and that no special agreement need be shown to recover for fraud. This is true enough, but plaintiffs voluntarily dismissed their common-law fraud claim before trial, and the concepts of fraud and breach of fiduciary duty are not coextensive. Fiduciary duty arises out of a relationship between persons; it goes beyond the mere duty not to lie or deliberately omit material facts; and whether such a relationship exists between a broker and a customer is a question of Minnesota law, on which opinions of courts of other jurisdictions are no more than persuasive. The able District Judge, who is better versed in these matters than we are, has held that more than a simple broker-customer contract must be shown. We defer to her judgment. It was not error to dismiss the fiduciary-duty claim, and any chance for punitive damages falls with it.

### IV. The Counterclaim for the Debit Balance

We likewise have no fault to find with the District Court's directed verdict in favor of defendant Merrill Lynch on its

counterclaim for the closing debit balance in the plaintiffs' accounts. The amount of the balance, $72,612.22, was stipulated. Normally a broker is entitled to be paid this balance, as an incident of the contract between it and the customer, because the broker, under the rules of the exchanges on which commodities are traded, must stand good for this loss if the customer does not. Here, plaintiffs argue that defendants' wrongful conduct should preclude it from recovering this balance, but this is only another way of saying that defendants have been guilty of churning and should reimburse plaintiffs for the losses caused by this misconduct. Those questions are more conveniently determined by the jury verdict on plaintiffs' claim itself, and to submit the counterclaim for the debit balance to the jury as well would be needlessly duplicative and confusing. Our holding that the plaintiffs may recover their out-of-pocket losses, as well as commissions wrongfully charged, already allows them to recover for all losses caused by the defendants' wrongful conduct. Thus, the District Court acted properly in refusing to submit the counterclaim to the jury and granting defendants' motion for directed verdict on it.

## V. Conclusion

To the extent that the judgment dismissed the claim for breach of fiduciary duty and awarded the amount claimed in the counterclaim, it is affirmed. Ordinarily, plaintiffs' churning claim would be remanded for a new trial limited to the issue on which we have disagreed with the District Court, that is, the amount of trading losses proximately caused by the churning. Here, however, this question cannot, as a practical matter, be separated from the issue of liability. The jury has found that some transactions were churned, and defendants have not appealed from this finding, but we do not know which transactions were thought to be wrongful, nor can a new jury be asked to award damages for trading losses without first having to decide which of the trades amounted to churning. Accordingly, if there is to be a new trial, it must encompass the question of liability as well as that of damages. Otherwise, we might end up with inconsistent determinations, the first jury having concluded that some, but not all, of the trades were churned, and there being no way to communicate to the second jury which trades were included in this finding. But a new trial on liability as well as on damages may be more than the plaintiffs-appellants have bargained for, so we think the fairest course is to give them a choice.

The cause will be remanded with the following directions: If plaintiffs do not elect a new trial, on liability as well as on all elements of damage, within such reasonable time as the District Court may fix, the judgment will stand affirmed in its entirety. If they do elect such a new trial, the new jury should be asked not only whether defendants are liable, but also specifically which trades were churned, and the extent to which commissions and out-of-pocket losses attributable to these trades should be charged against defendants. If the new jury returns a verdict in favor of plaintiffs, the amount of this verdict will then be offset against the judgment already entered on the counterclaim. The counterclaim is not to be submitted to the jury at the second trial, because the only question concluded by the judgment with respect to it is the proper amount of the debit balance. This question, unlike the others we have discussed, is easily separable and not intertwined with the issue of liability for churning.

Affirmed in part, reversed in part, and remanded with instructions.