706 F.Supp. 708 (1989)
The POLICE RETIREMENT SYSTEM OF ST. LOUIS, Plaintiff,
v.
MIDWEST INVESTMENT ADVISORY SERVICES, INC., et al., Defendants.
No. 87-1076 C (5).
United States District Court, E.D. Missouri.
February 10, 1989.
*709 *710 The Stolar Partnership, Charles Alan Seigel, Andrew F. Puzder, St. Louis, Mo., for plaintiff.
Albert A. Michenfelder Jr., Steven W. Koslovsky, St. Louis, Mo., for Guar. Trust and Finch.
Byron E. Francis, Catherine D. Perry, Armstrong, Teasdale, Kramer, Vaughan & Schlafly, St. Louis, Mo., for E.F. Hutton & Co., Inc.
Thomas J. DeGroot, Alan Popkin, Susan Sherberg, Popkin & Stern, Clayton, Mo., for James Bridges, and Midwest Inv.
Barry A. Short and Richard B. Walsh Jr., Lewis & Rice, St. Louis, Mo., for I.M. Simon & Co., Inc.
David V. Capes, Rosenblum, Goldenhersh, Silverstein & Zafft, St. Louis, Mo., for Angelo Parato.
Edward L. Dowd, Dowd & Dowd, St. Louis, Mo., for Thomas D. Pixley.
Kenton E. Kickmeyer, Thompson & Mitchell, St. Louis, Mo., for Paine Webber, Jackson & Curtis.
Arthur S. Margulis, Richard Eisen, Margulis & Grant, St. Louis, Mo., for Diversified Consultants, Donald Anton and Dotto Enterprises.
Thomas Flynn, St. Louis, Mo., for Klein.
Lewis C. Green, St. Louis, Mo., for U.S. A. Continental.
James J. Maloney, New York City, Donald L. Wolff, Clayton, Mo., for Anthony Daniele.
Susan L. Seigel, Memphis, Tenn., for Vining-Sparks.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiff, The Police Retirement System of St. Louis (Retirement System), filed a 21-count amended complaint on September 7, 1988, alleging that the 17 defendants participated in various schemes to defraud the Retirement System and divert its assets *711 to certain individuals and entities. The complaint includes allegations of RICO violations, securites fraud, churning, fraud, breach of fiduciary duty and breach of contract. The federal law claims are brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (Counts 1 through 3) and Section 27 of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78aa (Counts 4 through 8). The remainder of the complaint is premised on the Court's pendent jurisdiction over state claims. The Court has before it for disposition the motions to dismiss of 13 defendants and three motions to compel.
The Court is bound by a stringent standard in passing on a motion to dismiss. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957). The complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all the necessary factual allegations. Bennett v. Berg, 685 F.2d 1053, 1058 (8th Cir.1982). "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegation that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir.1982).

I. The RICO Claims.

Section 1964(c) of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, authorizes civil recovery for violations of § 1962 of that Act. Plaintiff alleges in Counts 1, 2 and 3 that defendants (excluding Paine Webber, Daniele and Vining-Sparks) violated 18 U.S.C. §§ 1962(c) and (d). The RICO Act makes it unlawful for a person associated with an enterprise to conduct the affairs of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c). Section 1962(d) makes it illegal for any person to conspire to violate § 1962(c). In their motions to dismiss, defendants argue that plaintiff has failed to state a RICO claim and that it has not been pled with the particularity required by Fed.R.Civ.P. 9(b).

A. Enterprise Requirement.
To state a claim under RICO, plaintiff must allege that the racketeering activity is connected with an "enterprise." The RICO statute defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).
In United States v. Lemm, 680 F.2d 1193 (8th Cir.1982), cert. denied, 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983), the Eighth Circuit outlined the three basic characteristics of a RICO enterprise: "(1) common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering." Id. at 1198. The Retirement System is a statutorily created pension trust which provides retirement and death benefits to City of St. Louis police officers and their beneficiaries. It has a legitimate, legal purpose separate and apart from the fraudulent acts alleged in plaintiff's complaint. The Court holds, therefore, that the Retirement System is an "enterprise" within the meaning of 18 U.S. C. § 1961(4).

B. Pattern of Racketeering Activity.
The Eighth Circuit has taken an extremely narrow view of what constitutes a pattern of racketeering activity. The court discussed this element in Superior Oil Co. v. Fulmer, 785 F.2d 252 (8th Cir.1986). Drawing from language in the landmark Supreme Court case Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the court held that "proof of a `pattern of racketeering activity' requires more than one `racketeering activity' and the threat of continued activity to be effective. It is this factor of continuity plus relationship which combines *712 to produce a pattern." Superior Oil, 785 F.2d at 257 (citing Sedima, 473 U.S. 496 n. 14, 105 S.Ct. 3285 n. 14) (emphasis in original).
Since the court's decision in Superior Oil, the Eighth Circuit has consistently held that where all the predicate acts were committed in furtherance of a single scheme, there is not sufficient continuity among the acts to meet the pattern requirement. Holmberg v. Morrisette, 800 F.2d 205, 209-10 (8th Cir.1986), cert. denied, 481 U.S. 1028, 107 S.Ct. 1953, 95 L.Ed.2d 526 (1987). The test formulated by the Eighth Circuit is whether defendants have engaged in similar endeavors in the past, whether they were engaged in similar activities elsewhere, or whether they have been engaged in other criminal activities. Terre Du Lac Assoc. v. Terre Du Lac, Inc., 834 F.2d 148, 150 (8th Cir.1987), petition for cert. filed, (April 21, 1988); Deviries v. Prudential-Bache Securities, 805 F.2d 326, 329 (8th Cir.1986).[1]
Plaintiff's complaint alleges a pattern of racketeering as follows:
On information and belief, the pattern of fraudulent schemes included, without limitation, schemes to generate money through churning, making and/or receiving kickback payments and/or benefits and charging excessive fees and commissions (the Monetary Benefit Schemes") for the benefit of Defendants ... and to the detriment of the Retirement Systems and a scheme to improperly generate political contributions (the `Political Contribution Scheme').
Amended Complaint, Count I, ¶ 135, Count II, ¶ 148, Count III, ¶ 161.
Plaintiff's RICO case statement and other pleadings have set forth in greater detail the four different schemes it believes establish a pattern of racketeering activity:
(1) The Midwest/I.M. Simon Scheme;
(2) The Guaranty/I.M. Simon Scheme;
(3) The Guaranty/U.S.A. Continental/Vining-Sparks Scheme; and
(4) The Midwest/E.F. Hutton/PaineWebber Scheme.
Further, plaintiff alleges that defendants Midwest, Guaranty, I.M. Simon, Anton, U.S.A. Continental, Vining-Sparks and others were involved in similar schemes to defraud the Firemen's Retirement System, thereby satisfying the requirement set forth in Terre Du Lac and Deviries that defendants engaged in similar activities in the past, engaged in similar activities elsewhere or engaged in other criminal activities.
Recognizing the Eighth Circuit's strict holdings in civil RICO cases, plaintiff has artfully pleaded and alleged numerous fraudulent schemes and criminal activities in an attempt to show a pattern of racketeering activity. In some circuits, perhaps plaintiff's RICO claims would be allowed to stand. In the Eighth Circuit and in this Court, they cannot.
Plaintiff alleges that defendants participated in four or five different schemes to defraud the Retirement System, thereby establishing the requisite but elusive pattern of racketeering activity. Following Superior Oil and its progeny, the Court does not find a pattern to exist. The most that can be inferred from plaintiff's pleadings is that the Retirement System's investment advisors, Midwest and Guaranty, each attempted to defraud the Retirement System. This was accomplished by making deals with the other defendants to direct business their way at higher commissions in exchange for kickbacks or soft dollar *713 benefits. Although the Court must accept as true the allegations of plaintiff's complaint, defendants' activities do not establish the pattern of racketeering activity that is required to state a claim under 18 U.S.C. § 1962(c).

C. Conspiracy Under § 1962(d)
Plaintiff also contends that defendants violated 18 U.S.C. § 1962(d), which makes it unlawful "for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." The Eighth Circuit has not addressed the elements of a conspiracy claim under § 1962(d), but the Court believes the requirements have been adequately discussed by other courts. In United States v. Boldin, 772 F.2d 719 (11th Cir.1985), the court established the following criteria for a § 1962(d) claim: "(1) the existence of an agreement, (2) an overt act in furtherance of the conspiracy, (3) the existence of an enterprise affecting interstate or foreign commerce, (4) the defendant's association with the enterprise, (5) the defendant's participation in conducting the enterprise's affairs, and (6) that the defendant's participation was through a pattern of racketeering activity, indicated by the commission of at least two racketeering acts." Id. at 727. See also United States v. Cauble, 706 F.2d 1322, 1341 n. 64 (5th Cir.1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984) ("agreement involved must include the vital element of agreeing to commit the predicate acts of racketeering").
These cases establish that a conspiracy claim under § 1962(d) will not lie when the Court has determined that the plaintiff has failed to state a claim under § 1962(c). Plaintiff's failure to establish a pattern of racketeering activity mandates the dismissal of its RICO claims under 18 U.S.C. §§ 1962(c) and 1962(d).

II. Securities Fraud.

Counts 4 through 7 of plaintiff's complaint allege violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)[2] and SEC rule 10b-5, 17 C.F.R. § 240.10b-5.[3] The Eighth Circuit has established five elements a plaintiff must prove in a private action under rule 10b-5: 1) prohibited conduct by the defendant, whether it be that the defendant employed a device, scheme or artifice to defraud, made misrepresentations or omissions of material fact, or engaged in acts, practices, or courses of business that operate as a fraud or deceit; (2) scienter, or an intent to deceive, manipulate or defraud; 3) that the fraudulent activity occurred in connection with the purchase and sale of a security; 4) causation, often analyzed in terms of materiality and reliance; and 5) damages. Harris v. Union Elec. Co., 787 F.2d 355, 362 (8th Cir.), cert. denied, 479 U.S. 823, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986). Defendants advance numerous arguments in support of their contention that plaintiff has failed to state a claim for violation of federal securities laws, principally relating to the third and fourth elements above.

A. Purchaser or Seller of a Security.
The Supreme Court held in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 *714 (1975), that only purchasers and sellers of securities are entitled to maintain actions for violations of § 10(b) and rule 10b-5. Defendants' motions to dismiss the securities fraud counts rely heavily on the argument that plaintiff was not a purchaser or seller of securities.
Defendants contend that plaintiff vested Midwest and Guaranty with sole investment authority and that the Retirement System did not retain control over investment decisions, thereby forfeiting the right to bring a claim under § 10(b). Defendants' argument rests upon the allegation in paragraph 24 of plaintiff's complaint, which states:
During the period of time that Midwest and Guaranty served as Investment Advisors for the Board, the Trustees were unsophisticated with respect to stock and bond investments and the stock and bond markets in general, did not fully understand the risks involved and, therefore, relied upon Midwest and Guaranty with respect to investment decisions concerning the assets they managed, and further relied upon Midwest's and Guaranty's fiduciary obligations and purported special expertise. Midwest and Guaranty initiated each trade and assumed de facto control of trading in each such account. (emphasis added)
Defendants urge the Court to follow the ruling of the Seventh Circuit Court of Appeals in O'Brien v. Continental Illinois Nat'l. Bank & Trust Co., 593 F.2d 54 (7th Cir.1979). In that case, the funds of a pension trust were turned over to the defendant bank for investment. The bank had sole discretion to make investments as it saw fit. Plaintiffs had the power to terminate the investment agreements with the bank at will, but plaintiffs had no right to receive notice of, or to be consulted about, proposed investments and no right to veto investment decisions. Given this total divestment of authority to purchase or sell securities, the court upheld the dismissal of plaintiffs' 10b-5 claims. "When the trustee or agent alone makes the investment decision to purchase or sell, his failure to disclose information about the purchase or sale to the beneficiary or agent does not satisfy the `in connection with' requirement of § 10(b)." O'Brien, 593 F.2d at 63.
Defendants Midwest and Bridges acknowledge that the Investment Advisor Agreement "may be interpreted contrary to plaintiff's allegations" that Midwest and Guaranty assumed de facto control of trading. Nevertheless, defendants observe that the Court is bound in passing on a motion to dismiss to consider as true the allegations of plaintiff's complaint. Thus, the Court must determine whether plaintiff's allegations amount to an admission that the Retirement System was not a purchaser or seller of securities.
The Court does not believe such an inference is warranted. Paragraph 24 of plaintiff's complaint, where it alleges that Midwest and Guaranty initiated each trade and assumed de facto control of trading, is within the preliminary statement of the complaint and only alleges facts that apply generally to the entire complaint. As plaintiff correctly states, control of accounts is an essential element of a churning claim. Karlen v. Ray E. Friedman & Co. Commodities, 688 F.2d 1193, 1203 (8th Cir.1982). "To establish unlawful churning, the plaintiff need not show that he vested in the broker or its representative formal discretion over the account; effective control is sufficient  particularly when the customer is relatively inexperienced and unsophisticated in commodity trading." Id.
The Court believes paragraph 24 was included only for the purpose of pleading churning. Where plaintiff has not alleged that it relinquished total control over investment decisions to Midwest and Guaranty, the Court does not feel it proper to infer that Midwest and Guaranty had such control. Plaintiff's complaint adequately pleads that the Retirement System was a purchaser and seller of securities for the purposes of § 10(b).

B. "In Connection With" Purchase or Sale.
Closely related to the issue just considered, the defendant's prohibited conduct *715 must have occurred "in connection with" the purchase or sale of a security. This requirement was addressed by the Supreme Court in Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). In that case, the Court held that plaintiffs must show that the fraudulent conduct "touches" the purchase or sale of the securities. Id. at 12-13, 92 S.Ct. at 168-169. The Bankers Life court did not explain what constitutes "touching" a security transaction, and the courts of appeals appear to disagree about the level of conduct required.
The diversity of court interpretations of Bankers Life is seen in decisions by the Fifth and Second Circuit Courts of Appeals. In Alley v. Miramon, 614 F.2d 1372 (5th Cir.1980), the court held that "in connection with" is to be flexibly applied, but requires that there be a nexus between the defendant's fraud and the securities sale. However, the "plaintiff in a Rule 10b-5 case need not establish a direct or close relationship between the fraudulent transaction and the purchase or sale, but only that the transaction involving the sale `touch' the transaction involving the defendant's fraud." Id. at 1378 n. 11 (citing Bankers Life). The "touching" requirement may be satisfied "when the proscribed conduct and the sale are part of the same fraudulent scheme." Id. (citing Smallwood v. Pearl Brewing Co., 489 F.2d 579, 595 (5th Cir.), cert. denied, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974)). See also Brown v. Ivie, 661 F.2d 62, 65 (5th Cir. 1981), cert. denied, 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982).
The Second Circuit has adopted a more restrictive view of when a misrepresentation is made "in connection with" the purchase or sale of a security. In Chemical Bank v. Arthur Andersen & Co., 726 F.2d 930 (2d Cir.), cert. denied, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984), the court observed that § 10(b) of the 1934 Act was drawn from § 17(a) of the 1933 Act, which covered frauds "in the offer, sale or purchase" of a security. "Although arguably `in connection with' has a somewhat broader sweep than `in', it may be just as true that the `in connection with' phraseology simply fit better with the rest of § 10(b)." Id. at 942. The court in Chemical Bank felt the Supreme Court did not intend to expand the scope of 10b-5 by using the word "touching" in its Bankers Life decision. "We are inclined to agree with Professor Loss, that `there is no reason to believe that the Justice's use of "touching" was anything more than his variation of "in connection with" as a matter of literary style.'" Chemical Bank, 726 F.2d at 942 (quoting Loss, Fundamentals of Securities Regulation, at 903-04 (1983)).
The Eighth Circuit has not addressed the "in connection with" requirement as thoroughly as have other courts. For example, in Harris v. Union Elec. Co., 787 F.2d 355 (8th Cir.), cert. denied, 479 U.S. 823, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986), the court merely reiterated the Bankers Life standard: "Plaintiffs must show that the fraudulent conduct `touches' the purchase or sale of the securities." Id. at 368. Like the courts of appeals, the nation's district courts are also spread across the board on the "touching" requirement. Regardless of their interpretation of the requirement, however, the courts agree on one issue: "It is important that the standard be fleshed out by a cautious case-by-case approach." Smallwood, 489 F.2d at 595. Accord, Chemical Bank, 726 F.2d at 942-43; Ketchum v. Green, 557 F.2d 1022, 1027 (3d Cir.), cert. denied, 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 300 (1977).
Plaintiff's complaint alleges 10b-5 violations against 14 of the 17 defendants. Looking to the allegations against each defendant, the Court believes the "in connection with" requirement is satisfied against all defendants except E.F. Hutton and PaineWebber. The allegations against these two defendants primarily concern the charging of excessive commissions and the soft dollar relationships they had with Midwest. In addition, plaintiff alleges that E.F. Hutton assisted Midwest with developing certain political contacts that would help Midwest control the Retirement System. The allegations form the basis for other common law claims against these defendants, *716 but the Court does not believe these are the types of activities that were intended to be regulated by § 10(b) or rule 10b-5. Accordingly, Count 5 will be dismissed against defendant E.F. Hutton and Count 6 will be dismissed against defendant PaineWebber.

C. Causation.
To satisfy the causation element, the plaintiff must show some causal nexus between the defendant's conduct and the plaintiff's loss. St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 562 F.2d 1040, 1048 (8th Cir.1977), cert. denied, 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978). Causation is often analyzed in terms of materiality and reliance. When the alleged fraudulent conduct consists of misrepresentations, the plaintiff is required to show that the fact was material and that plaintiff relied upon it in making its investment decision. Id. When the alleged fraudulent conduct involves primarily a failure to disclose, however, the plaintiff is not required to prove reliance. Harris v. Union Elec. Co., 787 F.2d at 366. Instead, reliance is inferred from materiality; that is, the causation element is established if the facts that were withheld are material. Id.
Several defendants contend that plaintiff has failed to satisfy the causation requirement because plaintiff has not shown that it relied on the alleged misrepresentations or omissions in its decision to purchase or sell any particular security. The Court does not agree. Plaintiff's complaint alleges that the Retirement System relied on defendants' misrepresentations and omissions in making investment decisions. Whether the evidence supports plaintiff's claim or reliance will be an issue for the trier of fact, but the allegations are sufficient to withstand a motion to dismiss.

D. Pleading with Particularity.
Defendants also contend plaintiff has failed to plead fraud with particularity as required by Fed.R.Civ.P. 9(b). This argument is apparently based on the fact that plaintiff's complaint does not allege specific fraudulent statements or misrepresentations by defendants, but this is not what rule 9(b) requires. "The obligation to plead circumstances need not be treated as requiring allegations of facts in the pleading, and neither Rule 8 nor Rule 9(b) requires fact pleading." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298 at 410 (1969). "Perhaps the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading." Id. at 415. The 55 pages of general allegations in plaintiff's complaint are sufficient to satisfy the particularity requirement of rule 9(b).

III. Churning.

The essence of the fraud of churning is that the frequency of the trades is unjustified by the particular circumstances of the case. Karlen v. Ray E. Friedman & Co. Commodities, 688 F.2d 1193, 1203 (8th Cir.1982). The plaintiff is required to prove control of the account by the defendant and excessive trading. Id. Effective control of the account is sufficient to establish unlawful churning. Id.
Count 8 of plaintiff's complaint alleges that defendants Midwest and Bridges "engaged in ... excessive trading and churning in the Retirement System's account in order to generate direct and indirect benefits to Midwest and Bridges." (Amended Complaint ¶ 206). Defendants contend plaintiff's complaint fails to state a claim because the fee Midwest received was based on the assets of the Retirement System fund it managed rather than commissions generated by the purchase or sale of securities.
Two types of losses can result from churning: (1) loss of commissions, interest and fees paid by the customer; and (2) loss of the value of the account. McGinn v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 736 F.2d 1254, 1257 (8th Cir.1984). Thus, "excessive trading can not only create unjustified commissions, but also cause losses to a customer's account that would *717 not have occurred if the account had not been churned." Id. Plaintiff's churning claim is based on the latter type of loss. Defendants' Midwest and Bridges' motion to dismiss Count 8 will be denied.

IV. Fraud.

Counts 9 through 13 of plaintiff's complaint allege common law fraud. The elements of fraud are:
(1) a false, material representation;
(2) the speaker's knowledge of its falsity or his ignorance of its truth;
(3) the speaker's intent that it be acted upon by the hearer in a manner reasonably contemplated;
(4) the hearer's ignorance of the falsity of the statement;
(5) the hearer's reliance on its truth, and the right to rely thereon; and
(6) proximate injury.
Gast v. Ebert, 739 S.W.2d 545, 547 (Mo. banc 1987); Sofka v. Thal, 662 S.W.2d 502, 506 (Mo. banc 1983). Plaintiff has adequately pleaded these elements.
In addition, defendants contend that plaintiff has failed to plead fraud with particularity as required by Fed.R.Civ.P. 9(b). As previously determined, however, the Court finds that the particularity requirement has been satisfied.
Defendant E.F. Hutton further argues that plaintiff has failed to state a fraud claim against it because E.F. Hutton owed no duty of disclosure to plaintiff. In Missouri, a failure to disclose a material fact is considered to be "an implicit representation of the nonexistence of such fact on which a party may rely, but only if the alleged fraudfeasor has a duty to speak." McMahon v. Meredith Corp., 595 F.2d 433, 438 (8th Cir.1979); Walsh v. Ingersoll-Rand Co., 656 F.2d 367, 369 (8th Cir.1981). The duty to disclose may arise under any of the following conditions: (1) where there is a relationship of confidence between the parties; (2) where there is an inequality of condition between the parties; or (3) where one party has superior knowledge not within the fair and reasonable reach of the other party. Id.
Plaintiff cites Roth v. Roth, 571 S.W.2d 659 (Mo.App.1978), for the proposition that a broker owes a fiduciary duty to his customer. E.F. Hutton does not dispute this principle, but contends that it owed no duty to the Retirement System because the investment advisors (Midwest and Guaranty) determined what stocks to buy or sell. Plaintiff argues that the involvement of an investment advisor does not relieve a broker of its fiduciary obligation. Relying on Rolf v. Blyth Eastman Dillon & Co., 424 F.Supp. 1021 (S.D.N.Y.1977), aff'd in part and remanded on other grounds, 570 F.2d 38 (2d Cir.1978), plaintiff contends that "a broker owes a fiduciary duty to the client even if the client has retained an investment advisor who exercises discretionary power over the account and who simply places orders through the broker." Plaintiff's Opposition to E.F. Hutton & Company, Inc.'s Motion to Dismiss, at 45. Rolf seems to hinge on the level of involvement of the broker in supervising the customer's investments. Here, the Court cannot say as a matter of law that plaintiff's allegations against E.F. Hutton do not rise to the level of involvement required to impose a duty of disclosure that is actionable in a claim for common law fraud. That issue will be left for the trier of fact.

V. Breach of Fiduciary Duty and Conspiracy.

Plaintiff alleges in Counts 14 through 18 that defendants Midwest and Guaranty breached fiduciary duties owed to plaintiff and that various other defendants conspired with Midwest and Guaranty to breach those fiduciary duties. Defendant E.F. Hutton correctly states the elements of a cause of action for civil conspiracy: (1) an agreement or understanding by the defendants to do an unlawful act; (2) the performance of the unlawful act pursuant to the agreement or understanding; and (3) resulting damage to the plaintiff. These elements all have been pleaded in plaintiff's complaint. The motions to dismiss plaintiff's claims for breach of fiduciary duty and conspiracy to breach a fiduciary duty will be denied.

*718 VI. Breach of Contract and Conspiracy.

Similarly, plaintiff alleges in Counts 19 through 21 that defendants Midwest and Bridges breached contracts with the Retirement System and that various other defendants conspired with Midwest and Bridges to breach those contracts. As the elements for conspiracy have already been determined, the Court finds that plaintiff's complaint states claims for breach of contract and conspiracy to breach a contract.

VII. PaineWebber Motion to Strike.

Paragraph 99 of plaintiff's amended complaint alleges:
Defendant Paine Webber's average commission charges to the Retirement System (22 per share) even exceed those charged by Defendant I.M. Simon (averaging 21 per share), whose commissions in a criminal indictment now pending against certain other Defendants in this lawsuit, were described as "excessive" and inflated." [sic] Nonetheless, each confirmation slip the Retirement System received from Paine Webber contained the blatantly false statement, in bold face type, `PREFERENTIAL RATE.' Midwest had no idea how the rates Paine Webber charged were preferential in comparison to anything else.
PaineWebber has moved the Court to strike the words "blatantly false" from ¶ 99. Defendant contends the characterization of its statements as "blatantly false" is inaccurate and "casts a derogatory light on PaineWebber." Memorandum of PaineWebber, Inc. in support of its Motion to Strike and to Dismiss, at 5.
The Court noted in a previous order that motions to strike are viewed with disfavor and will only be sustained when there is a compelling reason to do so. The Court does not believe the allegation that confirmation slips received from defendant contained a "blatantly false" statement is so scandalous that it should be stricken. Accordingly, the motion will be denied.

VII. Motions to Compel.

Several months ago, plaintiff filed two motions to compel that the Court held in abeyance until ruling on the motions to dismiss. On July 20, 1988, plaintiff filed a motion to compel production of documents from defendant E.F. Hutton. On August 5, 1988, plaintiff filed a motion to compel production of documents from defendant PaineWebber. Because those motions concern identical requests, they will be addressed jointly. In addition, defendant PaineWebber recently filed a motion to compel interrogatory answers from plaintiff.

A. Production of Documents from E.F. Hutton and PaineWebber.
Plaintiff's motions to compel concern four requests for production of documents. First, plaintiff seeks documents which evidence bills or statements issued by E.F. Hutton and PaineWebber to Midwest. Second, plaintiff requests documents which evidence commission rates charged by E.F. Hutton and PaineWebber for stock transactions directed to them by Centerre Bank, Boatmen's Bank and Mercantile Bank Trust Departments between January 1, 1983 and December 31, 1985. Third, plaintiff seeks documents which evidence commission rates charged by E.F. Hutton and PaineWebber for stock transactions handled for all public pension trusts in the State of Missouri. Fourth, plaintiff requests documents which evidence commission rates charged by E.F. Hutton and PaineWebber for transactions directed to them by Midwest for clients other than the Retirement System.
Defendants object to the production requests principally on the ground that they are neither relevant nor calculated to lead to the discovery of admissible evidence. Defendants characterize the issue in terms of whether they owed plaintiff a duty to charge certain rates for their services. But the allegations of plaintiff's complaint go much further than defendants would suggest; E.F. Hutton and PaineWebber are also charged with fraud and conspiring with defendant Midwest and others to breach a fiduciary duty and to breach a contract. Thus, the Court's focus is not whether defendants owed plaintiff a duty to charge certain rates, but whether plaintiff's discovery requests are relevant to *719 any of the claims stated in plaintiff's complaint.
As discussed above, a cause of action for civil conspiracy requires that there be an agreement to do an unlawful act, the performance of the unlawful act pursuant to the agreement, and damages to the plaintiff. The relevancy of the requested documents is demonstrated by examining the breach of contract and related conspiracy claims. Plaintiff's contract with Midwest required Midwest to "use reasonable efforts to obtain the most favorable price, execution and other services from" the brokers it utilized. To prove that Midwest conspired with E.F. Hutton and PaineWebber to breach this contract provision, plaintiff must establish that the rates charged by E.F. Hutton and PaineWebber were not the most favorable rates available. There are at least two ways this may be shown: first, by comparing rates charged for Retirement System transactions with those charged on other E.F. Hutton and PaineWebber accounts; and second, by comparing rates charged by E.F. Hutton and PaineWebber with rates charged by other brokers. The Court finds, therefore, that the documents sought by plaintiff are relevant not only to the claims against E.F. Hutton and PaineWebber, but also to plaintiff's claims against other defendants.
Plaintiff's requests seeking commission rates charged on transactions from Centerre, Boatmen's and Mercantile are limited to a three-year period. The other requests should contain a similar restriction. Because the documents relate to claims against Midwest and other defendants, the production of documents should not be limited to the time that E.F. Hutton and PaineWebber acted as brokers on Retirement System accounts, but to the three-year period during which Midwest served as an investment advisor for the Retirement System. These documents should be produced within twenty (20) days from the date of this order.

B. PaineWebber's Motion to Compel Answers to Interrogatories.
In its motion to compel filed December 5, 1988, defendant PaineWebber contends that plaintiff has not responded fully to its interrogatory relating to the identification of expert witnesses. In that interrogatory, defendant requested the substance of the facts and opinions to which plaintiff's experts are expected to testify and the grounds for each opinion. Plaintiff filed its identification of expert witnesses on November 1, 1988, in which plaintiff named four experts and gave a very short synopsis of the nature of each person's testimony. On November 23, 1988, plaintiff supplemented its response by stating in greater detail the basis for each expert's opinion. Finally, on December 16, 1988, plaintiff filed a second supplemental response to the expert witness interrogatory. This final response gives specific details of the experts' testimony. The Court believes plaintiff's responses are adequate. The motion to compel will be denied.

ORDER
In accordance with the Memorandum filed herein today,
IT IS HEREBY ORDERED that the motions of defendants Midwest Investment Advisory Services, Inc., James F. Bridges, Guaranty Trust Co., Angelo J. Parato, James A. Finch, I.M. Simon & Co., Inc., Thomas D. Pixley, E.F. Hutton & Co., Inc., PaineWebber, Inc., Diversified Consultants, Inc., Donald C. Anton and Walter P. Klein to dismiss plaintiff's amended complaint are SUSTAINED in part and DENIED in part.
IT IS FURTHER ORDERED that the motion of defendant Vining-Sparks Securities, Inc. to dismiss plaintiff's amended complaint is DENIED.
IT IS FURTHER ORDERED that Counts 1, 2 and 3 of plaintiff's amended complaint are DISMISSED with prejudice for failure to state a claim upon which relief can be granted.
IT IS FURTHER ORDERED that Count 5 of plaintiff's amended complaint is DISMISSED with prejudice against defendant E.F. Hutton & Co., Inc. for failure to state a claim upon which relief can be granted.
*720 IT IS FURTHER ORDERED that Count 6 of plaintiff's amended complaint is DISMISSED with prejudice against defendant PaineWebber, Inc. for failure to state a claim upon which relief can be granted.
IT IS FURTHER ORDERED that the motion of defendant PaineWebber, Inc. to strike portions of plaintiff's amended complaint is DENIED.
IT IS FURTHER ORDERED that plaintiff's motions to compel production of documents from defendants E.F. Hutton and PaineWebber are SUSTAINED. Defendants shall produce the requested documents within twenty (20) days, but the requests shall be limited to the three-year period between January 1, 1983 through December 31, 1985.
IT IS FINALLY ORDERED that defendant PaineWebber, Inc.'s motion to compel is DENIED.
NOTES
[1] The Court has been unable to find a single case since Superior Oil in which the Eighth Circuit has found a pattern of racketeering activity in a civil RICO claim. The Eighth Circuit held in the following cases that a pattern did not exist: Phenix Fed. Sav. & Loan Assoc. v. Shearson Loeb Rhoades, 856 F.2d 1125 (8th Cir.1988), petition for cert. filed, (Dec. 8, 1988); Terre Du Lac Assoc. v. Terre Du Lac, Inc., 834 F.2d 148 (8th Cir.1987), petition for cert. filed, (Apr. 21, 1988); H.J. Inc. v. Northwestern Bell Tel. Co., 829 F.2d 648 (8th Cir.1987), cert. granted, ___ U.S. ___, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1988); Allright Mo., Inc. v. Billeter, 829 F.2d 631 (8th Cir.1987); Ornest v. Delaware North Cos., 818 F.2d 651 (8th Cir.1987); Madden v. Gluck, 815 F.2d 1163 (8th Cir.), cert. denied, ___ U.S. ___, 108 S.Ct. 86, 98 L.Ed.2d 48 (1987); Deviries v. Prudential-Bache Securities, 805 F.2d 326 (8th Cir.1986); Holmberg v. Morrisette, 800 F.2d 205 (8th Cir.1986) cert. denied 481 U.S. 1028, 107 S.Ct. 1953, 95 L.Ed.2d 526 (1987).
[2] 15 U.S.C. § 78j(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange 
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
[3] 17 C.F.R. § 240.10b-5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,