[Nos. 22471–9–I; 22472–7–I. Division One. June 25, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. DOLORES G. SAAS, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES H. SAAS, *Appellant.*

*Lenell Nussbaum* of *Washington Appellate Defender Association,* for appellant Delores G. Saas.

*Ronald P. Abernethy* and *Abernethy & Jaquette,* for appellant Charles H. Saas.

*Norm Maleng, Prosecuting Attorney,* and *Lynn S. Prunhuber, Senior Deputy,* for respondent.

COLEMAN, C.J.—Charles and Dolores Saas appeal from the judgments and sentences entered pursuant to their convictions for securities fraud. We reverse.

Between November 1, 1981, and April 5, 1983, Charles and Dolores Saas fraudulently obtained substantial sums of money from Doris Hellner "secured" by a series of nine notes by making false representations about their lives, financial status, and property. The Saases had been charged with three counts of securities fraud and were facing additional potential charges when, through their attorneys, they negotiated guilty plea agreements with the State. The State agreed that if the Saases each pleaded guilty to one consolidated count of securities fraud, which would include all nine notes in a series of transactions with Hellner, it would dismiss the remaining counts, file no

additional charges based upon those nine notes, and recommend 10–year deferred sentences.[1] Charles and Dolores Saas accepted the State's offer and pleaded guilty to the crime of securities fraud in violation of RCW 21.20.010[2] and RCW 21.20.400.[3] The trial court accepted the Saases' guilty pleas.

The Saases subsequently retained new attorneys and filed motions to withdraw their guilty pleas, claiming that they were not made voluntarily and that there was no factual basis for the pleas because the notes involved were not "securities". On May 12, 1988, the trial court denied defendants' motions. On June 15, 1988, the trial court imposed a 10–year suspended sentence on each of the Saases. This appeal followed.

Appellants contend that the trial court erred by finding that there was a factual basis for their guilty pleas. CrR 4.2(d) requires the trial court taking a guilty plea to be "satisfied that there is a factual basis for the plea." The factual basis requirement of CrR 4.2(d) is to ensure that the acts admitted to are sufficient to constitute a violation of the law.

One of the elements of securities fraud which the State would have to prove beyond a reasonable doubt if the matter went to trial is that the transaction was "in connection with the offer, sale or purchase of [a] security," and that

---

[1]The facts in the instant case would clearly have supported theft charges; however, the statute of limitations had apparently expired.

[2]RCW 21.20.010 provides that "[i]t is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

"(1) To employ any device, scheme, or artifice to defraud;

"(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

"(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

[3]RCW 21.20.400 sets forth the penalty for a violation of RCW 21.20.010.

the notes constituted securities. The term "security" is defined in RCW 21.20.005, which states in relevant part:

> The definitions set forth in this section shall apply throughout this chapter, unless the context otherwise requires:
>
> . . . .
>
> (12) "Security" means any note; . . . evidence of indebtedness; . . . investment contract . . ..

It is uniformly held, however, that the fact that a note is defined as a security within RCW 21.20.005(12) is not dispositive. *United Housing Found., Inc. v. Forman,* 421 U.S. 837, 850, 44 L. Ed. 2d 621, 95 S. Ct. 2051 (1975). We must therefore analyze the cases which have discussed when a note is a security.

■ Since the above definition mirrors the definition found in the federal Securities Act of 1933, 15 U.S.C. §§ 77a, 77b *et seq., State v. Philips,* 108 Wn.2d 627, 630, 741 P.2d 24 (1987), we look to federal law in order to determine the meaning of the term "security". *Philips,* at 630; *see also* RCW 21.20.900 (policy of the Securities Act of Washington is to make the law uniform and to coordinate its interpretation and administration with related federal regulation).

■ The fundamental purpose of the Securities Act of 1933 is "to eliminate serious abuses in a largely unregulated securities market". *Reves v. Ernst & Young,* __ U.S. __, 108 L. Ed. 2d 47, 110 S. Ct. 945, 949 (1990). However, despite the virtually limitless scope of human ingenuity, "especially in the creation of 'countless and variable schemes devised by those who seek the use of the money of others on the promise of profits,'" Congress did not intend to provide a general cause of action for all fraud. *Reves,* 110 S. Ct. at 949. Prior to *Reves,* both federal and Washington courts applied the *Howey* "investment contract" test adopted in *Securities & Exch. Comm'n v. W.J. Howey Co.,* 328 U.S. 293, 90 L. Ed. 1244, 66 S. Ct. 1100, 163 A.L.R. 1043 (1946), in order to determine whether a note was a security. *Reves,* 110 S. Ct. at 950; *Philips,* at 632. That test requires "(1) an investment of money, (2) in a common enterprise, (3) where the investor expects to reap profits

from the efforts of the promoter or a third party." *Philips,* at 632.

The Court in *Reves* rejected the approaches of those courts that have applied the *Howey* test to notes. The Court reasoned that to hold that a note was not a security unless it met a test designed for investment contracts, an entirely different variety of instrument, would make the security act's enumeration of numerous types of instruments superfluous. Instead, the Court chose to adopt the "family resemblance" test on the basis that it provided a more promising framework for analysis. *Reves,* 110 S. Ct. at 951. We find this reasoning persuasive and, thus, apply the *Reves* analysis to the facts in this case.[4]

 Because the security acts define security to include any note, the test begins with the presumption that every note is a security. This presumption, however, is rebuttable by showing that the note bears a strong resemblance to one of the following enumerated categories of instruments: (1) a note delivered in consumer financing; (2) a note secured by a mortgage on a home; (3) a short–term note secured by a lien on either a small business or some of its assets; (4) a note evidencing a character loan to a bank customer; (5) a short–term note secured by an assignment of accounts receivable; (6) a note which simply formalizes an open account debt incurred in the ordinary course of business; or (7) notes evidencing loans by commercial banks for current operations. *Reves,* 110 S. Ct. at 951.

The *Reves* Court set forth the following factors to consider in determining whether a note bears a strong resemblance to one of the above categories: (1) the motivations that would prompt a reasonable seller and buyer to enter into the transaction; (2) the plan of distribution of the instrument, *i.e.,* whether it is an instrument in which there

---

[4]Even though we apply the family resemblance test to the facts of this case, our conclusion would be the same even if we were to apply the *Howey* test. The facts here do not establish that Hellner was investing money in a common enterprise with the expectation of reaping profits from appellants or a third party.

is a common trading for speculation or investment; (3) the reasonable expectations of the investing public; and (4) whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument thereby rendering application of the securities act unnecessary. The Court further held that the above list was not exhaustive and may be added to by using these four factors. *Reves,* 110 S. Ct. at 951–52.

Applying the family resemblance approach to the facts in the instant case, we conclude that the notes at issue here are not securities. With respect to the first factor, the *Reves* Court noted that "[i]f the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a 'security.'" *Reves,* 110 S. Ct. at 951–52. On the other hand, "[i]f the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash–flow difficulties, or to advance some other commercial or consumer purpose, . . . the note is less sensibly described as a 'security.'" *Reves,* 110 S. Ct. at 952. In the instant case, the facts establish that Hellner believed she was making short–term loans to appellants who were experiencing short–term cash flow problems. Hellner first loaned appellants $30,000 in exchange for a note prepared by appellants when they told her that they would lose the large down payment they had placed on a house they were purchasing if they could not borrow some money for 1 month. The note as written was secured by a diamond ring and due and payable upon the completion and sale of condominiums in which appellants allegedly had an ownership interest. A second loan was made when appellants asked Hellner to purchase a valuable icon from Frederick & Nelson for them. They asked Hellner to charge the icon to her account so they could take

advantage of her store discount. Appellants then executed another note to Hellner for the icon secured by the same condominiums in which appellants allegedly had an ownership interest. Appellants subsequently issued a third note to Hellner in exchange for $7,000 which they needed for cash flow problems. This note, like the others, was to be secured by the condominiums.

The notes were not sold so that appellants could raise money for the general use of a business enterprise or to finance substantial investments. Although repayment of the notes was tied to the successful completion and sale of the condominiums, appellants did not borrow or use the money to facilitate that end, nor did Hellner believe that the funds were loaned for those purposes. Rather, appellants used the money which they obtained from Hellner for such things as a down payment on a house and purchasing an icon, the very things for which Hellner was told the money was needed. Thus, under *Reves v. Ernst & Young*, ___ U.S. ___, 108 L. Ed. 2d 47, 110 S. Ct. 945, 949 (1990), the notes in the instant case cannot sensibly be described as securities.

With respect to the second factor, the notes here were not commonly traded for speculation or investment. They were not marketed as investments, nor do they have the characteristics of an investment. They were neither traded on an exchange, nor sold to a broad segment of the public.

With respect to the third factor—the public's reasonable perceptions—the facts here do not establish that the notes were investments. The Supreme Court has consistently identified the fundamental essence of a security to be its character as an "investment." *Reves*, 110 S. Ct. at 953. Although the notes in the instant case yielded 18 percent interest and provided that they were due and payable upon the completion and sale of the condominiums in which appellants allegedly had an ownership interest, there were countervailing factors that would have led a reasonable

person to the conclusion that these notes were not securities. For example, when Hellner agreed to loan appellants the $30,000 so that they would not lose the down payment they had made on their home, Hellner was under the impression that she would be repaid in 1 month. Moreover, the money was not loaned or used by appellants in order to facilitate the completion and sale of the condominiums, nor did Hellner have any expectations that the money would be used for that purpose. There were no investment prospects here. The facts here establish that Hellner believed she was helping friends with their short-term cash flow problems.

Finally, we note that the fourth factor, *i.e.*, the existence of a regulatory scheme which significantly reduces the risk of the instrument, is irrelevant in the instant case.

In conclusion, even though the facts in the instant case demonstrate fraud, the cases make it clear that fraud is not enough to make a prima facie case under the securities act. The notes here simply do not resemble securities. Rather, they were loans Hellner made to appellants which carried with them some conditions which made it highly unlikely that Hellner would ever be repaid. The insertion of these provisions which Hellner was either unaware of because of appellants' verbal representations, or she did not understand, goes to the essence of the fraud perpetrated upon her, not to the characterization of the notes as securities. As was noted previously, the securities act was not intended as a general remedy for all fraudulent transactions. Our analysis of the record indicates that the notes are not securities and, therefore, the securities act does not apply. Thus, there was no factual basis for appellants' guilty pleas. The remedy appellants sought before the trial court was permission to withdraw their pleas of guilty. This relief should have been granted. On appeal they additionally seek dismissal of the charges. The question of dismissal has not been ruled upon by the trial court and, therefore, it should not be addressed for the first time on appeal.

Reversed and remanded for further proceedings consistent with this opinion.

SWANSON and PEKELIS, JJ., concur.

After modification, further reconsideration denied September 17, 1990.

Review granted at 116 Wn.2d 1006 (1991).