**PROCHASKA & ASSOCIATES, INC., Plaintiff,**

v.

**MERRILL LYNCH PIERCE FENNER & SMITH, INC., a corporation, Defendant.**

No. 8:CV91–00073.

United States District Court, D. Nebraska.

Feb. 26, 1992.

Gary L. Hoffman, Erickson & Seder-strom, Omaha, Neb., for plaintiff.

Lindsey Miller–Lerman, Kathleen M. Quinn, Kutak Rock &. Campbell, Omaha, Neb., for defendant.

## MEMORANDUM· OPINION

CAMBRIDGE, District Judge.

THIS MATTER is before the Court on a motions by Defendant Merrill Lynch Pierce Fenner & Smith to dismiss and/or to make more definite and certain (Filing No. 26). For the reasons set out below, the Court finds that the motion to dismiss should be granted as to the plaintiff's claims involving state and federal securities laws (the First, Second, Fourth and Fifth Claims) and as to the plaintiff's claim involving the Racketeer Influenced and Corrupt Organizations Act ("RICO") (the Third Claim); the motion will be denied as to the plaintiff's claim based upon common law fraud (the Sixth· Claim). The motion to make more definite and certain will be denied.

## I. BACKGROUND

This action stems from the sale of four allegedly fraudulent and valueless promissory notes by Robert·J. Prendergast, Jr., formerly a financial consultant for the defendant Merrill Lynch Pierce Fenner & Smith, Inc. (hereinafter "Merrill Lynch"). The notes were purchased by the plaintiff, Prochaska & Associates, Inc. (hereinafter "Prochaska"). Jurisdiction is predicated upon 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity of citizenship), and 28 U.S.C. § 1336 (action arising out of interstate commerce).

The plaintiff does not allege that Merrill Lynch directly participated in the sales; rather, it alleges that Prendergast operated with the apparent authority of, and on behalf of, Merrill Lynch, that Merrill Lynch was a "controlling person" under the Securities Acts, and that Merrill Lynch knowingly or with reckless disregard failed· to adequately supervise Prendergast.

Specifically, the plaintiff alleges that, while employed by Merrill Lynch as a senior financial consultant, Prendergast induced the plaintiff to purchase, on four separate occasions, promissory notes in the amounts of $60,000.00, $58,300.00, $50,-000.00, and $55,000.00, respectively, totalling $223,300.00. Each of the notes, copies of which are attached as Exhibits A through D of the Amended Complaint (Filing No. 20), stated on its face that it was to be repaid approximately three months after purchase, and each is purportedly secured by "materials to be shipped" and by twenty shares of capital stock of Prendergast Farms, Inc. The plaintiff alleges that Prendergast represented that the notes were safe investments and that he would personally guarantee those notes; the plaintiff further alleges that Prendergast knew at all relevant times that the notes were fraudulent and without value.

The plaintiff seeks to recover under six separate causes of action: first, for violation of § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5 promulgated thereunder (17 C.F.R. § 240.105–b); second, a violation of § 12(2) of the Securities Act of 1933 (15 U.S.C. § 77*l* (2)); third, violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(c)); fourth, violation of § 8–1118(2) of the Securities Act of Nebraska; fifth, violation of § 8–1102 of the Securities Act of Nebraska; and sixth, an allegation of common law fraud.

## II. THE MOTION TO DISMISS

In considering a motion to dismiss under F.R.Civ.P. 12(b)(6), the allegations in the complaint must be viewed in the light most favorable to the plaintiff. *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes some insuperable bar to relief." *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir.1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979).

### A. THE PROMISSORY NOTES ARE NOT SECURITIES.

█ Defendant Merrill Lynch argues, and the Court finds, that the notes in ques-

tion were not "securities" as that term is utilized in the federal and state securities acts.[1] Although § 3(a)(10) of the Securities Exchange Act of 1934 states that "[t]he term 'security' means *any* note" (emphasis added), that phrase "should not be interpreted to literally mean 'any note,' but must be understood against the backdrop of what Congress was attempting to accomplish in enacting the Securities Acts." *Reves v. Ernst & Young*, 494 U.S. 56, 63, 110 S.Ct. 945, 952, 108 L.Ed.2d 47 (1990).

 In *Reves* the Supreme Court set out the standard for determining whether a note is a security:

> [I]n determining whether an instrument denominated a "note" is a "security," courts are to apply the ... "family resemblance" test ...: a note is presumed to be a "security" and that presumption may be rebutted only by a showing that the note bears a strong resemblance ... to one of the enumerated categories of instrument. If an instrument is not sufficiently similar to an item on the list, the decision whether another category should be added is to be made by examining the same factors.

*Id. at* 67, 110 S.Ct. at 952. The enumerated categories of instrument which are definitively non-securities are:

> the note delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its assets, the note evidencing a "character" loan to a bank customer, short-term notes secured by an assignment of accounts receivable, or a note which simply formalizes an open-account debt incurred in the ordinary course of business....

*Id.* at 65, 110 S.Ct. at 951. The four factors to be considered in determining whether an instrument is sufficiently kindred to those categories so as to be considered a non-security are: (1) the motivations for the transaction; (2) the plan of distribution, e.g. common trading for speculation or investment; (3) the reasonable expectations of the investing public; and (4) the existence of a regulatory scheme that would make the Securities Acts superfluous. *Id.* at 66–67, 110 S.Ct. at 951–52.

The defendant argues that the notes are not securities because they bear a strong family resemblance to one of the *Reves'* Court's categories, that of "a short-term note secured by a lien on a small business or some of its assets." *Id.* at 65, 110 S.Ct. at 952. The Court agrees. Each note provides that it is to be repaid within approximately three months, and each is purportedly secured, both by the inventory of the issuing corporate entity, and by shares of stock in Prendergast Farms, Inc.[2] In other words, each is a short-term note secured by a lien on a small business or its assets. Accordingly, these promissory notes, by application of the "family resemblance test" are not securities. *Cf. First Federal Savings and Loan Ass'n. v. Worthen Bank & Trust Co.*, 919 F.2d 510, 515–16 (9th Cir. 1990) (finding a non-security where the note in question fit "squarely" within the commercial bank loan exception).

 Moreover, the Court further finds that the notes also fail to qualify as securities because they fail to satisfy three of the four factors cited in *Reves*. 494 U.S. at 66, 110 S.Ct. at 951–52.

---

**1.** Because the Securities Act of Nebraska provides that its sections are to be construed consistently with the federal regulations and with the regulations of other states enacting the Uniform Securities Act, *see* Neb.Rev.Stat. § 8–1122 (1987), and because the Nebraska Supreme Court has apparently not addressed this specific issue, this Court will apply identical analysis to federal and state law claims on this issue. *See also State v. Jones*, 235 Neb. 1, 4, 453 N.W.2d 447, 451 (1990): "In interpreting the Securities Act of Nebraska, § 8–1122 encourages reference

to federal law and the law of other states that have adopted the Uniform Securities Act."

**2.** The Court will consider securities status of the notes on the basis of "what [they] would have been but for the fraud," *Singer v. Livoti*, 741 F.Supp. 1040, 1050 (S.D.N.Y.1990), because the issue here is the status of the instruments as they were bought or sold, not their ultimate value. The latter "goes to the essence of the fraud ..., not to the characterization of the notes as securities." *State v. Saas*, 792 P.2d 554, 557–58 (Wash.App.1990).

The first of those factors is the motivation of the parties to the transaction. By that test,

> [i]f the seller's purpose is to raise money for the general use of business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a 'security.' If the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, *or to advance some other commercial or consumer purpose*, on the other hand, the note is less sensibly described as a 'security.'

*Id.* (Emphasis added).

The plaintiff alleges that its interest in purchasing was the ten per cent return on the notes, an allegation which may satisfy the purchaser's prong of the test. However, the notes are silent as to the seller's purposes, and, while the Court is required to view the allegations in the light most favorable to the plaintiff, the complaint as presented provides no reason for the Court to presume or infer a purpose where none is alleged.

■ In any event, the notes clearly fail to satisfy the second factor of the *Reves* analysis, which is to "examine the 'plan of distribution' of the instrument to determine whether it is an instrument in which there is 'common trading for speculation or investment.'" *Id.* at 66, 110 S.Ct. at 952. That factor is generally satisfied if the notes are "offered and sold to a broad segment of the public." *Id.* at 66–67, 110 S.Ct. at 953. There is simply nothing in the facts as alleged to support a finding that these four notes were part of or comprised any sort of commonly traded or offered instrument.

The third stage of the *Reves* analysis is to "examine the reasonable expectations of the investing public." *Id.* There is nothing in these allegations that would support a finding that these notes would be consid-

ered as securities. *Cf. Singer v. Livoti,* 741 F.Supp. 1040, 1050 (S.D.N.Y.1990):

> Surely there was no public expectation that a short term note of this sort would be traded or speculated in as a security, for the most any purchaser could derive would be the collection of interest at 10% for less than a year. . . .

For these reasons the Court finds that the promissory notes sold by Prendergast are not securities. Accordingly, those claims predicated upon violation of state and federal securities laws must be dismissed.[3]

### B. PLAINTIFF HAS FAILED TO ALLEGE A RICO CLAIM AGAINST MERRILL LYNCH.

Merrill Lynch next argues that the complaint fails to state a RICO claim. The Court agrees.

■ Merrill Lynch first argues that the complaint is deficient because, in naming only Merrill Lynch as the defendant, it fails to allege the existence of an enterprise distinct from the person alleged to have violated the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 *et seq.*).

It is well-established that such an allegation is essential to a RICO claim. *See, eg., Bennett v. Berg,* 685 F.2d 1053, 1061–62 (8th Cir.1982), *modified en banc* 710 F.2d 1361, 1364 & n. 4 (8th Cir.), *cert. denied* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983), and *Hirsch v. Enright Refining Co.,* 751 F.2d 628, 633 (3d Cir.1984) ("the language contemplates that the 'person' must be associated with a separate 'enterprise' before there can be RICO liability on the part of the 'person'"). *And see generally* David B. Smith and Terrance G. Reed, *Civil RICO* ¶ 3.07[1][a] at 3–61 (1991):

> Section 1962(c) makes it unlawful for any person employed by or associated with an enterprise to conduct that enterprise through a pattern of racketeering activi-

---

**3.** These claims allege that Merrill Lynch is liable for aiding and abetting in securities fraud under 15 U.S.C. § 78b and Rule 10b–5 (First Claim) and 15 U.S.C. § 77*l*(2) (Second Claim), and un-der § 8–1102 of the Securities Act of Nebraska (Fifth Claim); and as a "controlling person" under § 8–1118(2) of the Securities Act of Nebraska (Fourth Claim).

ty. The statutory language clearly envisions a relationship between a 'person' and an 'enterprise' as an element of the offense. Only a person employed by or associated with an enterprise, not the enterprise itself, may violate section 1962(c).... Since a corporation cannot logically be 'employed by or associated with' itself, imposing liability on the corporate enterprise would require the courts to disregard the limitations inherent in the statutory language.

Clearly, the complaint fails to state a cause of action against Merrill Lynch as being in direct violation of 18 U.S.C. § 1962(c); there is no allegation that Merrill Lynch acted as a 'person', and no allegation of an 'enterprise' separate from Merrill Lynch.

■ Plaintiff, however, argues that Merrill Lynch is nonetheless liable in its role as the employer of Prendergast. This argument is unpersuasive. Merrill Lynch clearly cannot be found liable by means of *respondeat superior* theory; *see Luthi v. Tonka Corp.*, 815 F.2d 1229, 1230 (8th Cir. 1987) ("We decline to apply the doctrine of *respondeat superior* to ... RICO claims").

Prochaska, however, argues that *Luthi* is inapposite because that decision did not expressly foreclose a cause of action under RICO when the corporation benefitted from the employee's actions while in its employment. *Luthi*, 815 F.2d at 1230, n. 1. Assuming *arguendo* that this dicta is a finding of law, the complaint nonetheless fails to allege that Prendergast either did or intended to act for the benefit of Merrill Lynch. There simply is no RICO cause of action against Merrill Lynch.

## C. PLAINTIFF HAS PLEADED FRAUD WITH SUFFICIENT PARTICULARITY.

■ Prochaska has also alleged common law fraud and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO", 18 U.S.C. § 1961 *et seq.*). That claim rests on the allegation that Prendergast was acting with the apparent authority of Merrill Lynch when he sold the fraudulent promissory notes.

Merrill Lynch first argues that the fraud claim should be dismissed because Prochaska has failed to plead with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. The Court does not agree.

The standard for finding the balance between Rule 9(b)'s requirement that "[i[n all averments of fraud ... the circumstances constituting fraud ... should be stated with particularity," and Rule 8(a)'s basic requirement of "a short and plain statement of the claim" was set out in 5 Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1298 (1990) at 617–648:

Rule 9(b) ... does not render the general principles set forth in Rule 8 entirely inapplicable to pleadings alleging fraud; rather, the two rules must be read in conjunction with each other.... Thus it is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.... Perhaps the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading.

*See also Hirt v. UM Leasing Corp.*, 614 F.Supp. 1066, 1072 (D.Neb.1985) (same). Fact pleading is not required. *Police Retirement System v. Midwest Invest. Advisory Services, Inc.*, 706 F.Supp. 708 (E.D.Mo.1989), *aff'd in part and app. dism. in part, vacated in part*, 940 F.2d 351 (8th Cir.1991).

In its amended complaint, Prochaska alleges that Prendergast, while employed by Merrill Lynch, made "several" contacts with Donald F. Prochaska, president of Prochaska & Associates, from "early 1989" until September, 1990. (Filing No. 20 at 2). The complaint alleges that Prendergast represented that the notes were "very safe." (*Id.* at 20). The complaint also alleges that the promissory notes in question were sold "on or about June 1, 1990" in the amount of $60,000.00; "on or about July

11, 1990" in the amount of $58,300.00; "on or about August 21, 1990" in the amount of $50,000.00; and "on or about September 5, 1990" in the amount of $55,000.00. (*Id.* at 3–4). Finally, it alleges that Prendergast "acted with the apparent authority of, and on behalf of, Merrill Lynch." (*Id.* at 2).

These allegations, although not detailed, are sufficient to satisfy the purpose of Rule 9(b), which is to "give adequate notice to an adverse party and enable [it] to prepare a responsive pleading." 5 *Wright and Miller, supra.* The motion to dismiss this part of the complaint for failure to plead fraud with sufficient particularity will be denied.

■ Merrill Lynch also argues that the complaint fails to adequately allege that Prendergast was acting with the apparent authority of Merrill Lynch. The Court does not agree. The bald allegation that Prendergast "acted with the apparent authority of, and on behalf of, Merrill Lynch," (Filing 20, Amended Complaint at 2) is by itself a mere legal conclusion and is therefore insufficient to withstand a motion to dismiss. *See, e.g. Woodruff v. Merrill Lynch Pierce Fenner & Smith,* Fed. Sec.L.Rep. (CCH) ¶ 95,387 at 96,899, 1990 WL 124996 (D.Neb.1990).

■ However, the complaint also alleges that at all times relevant Prendergast was employed by Merrill Lynch (Filing 20, Amended Complaint, at 2), that Prendergast had contacted Prochaska "with respect to investment possibilities *through* Merrill Lynch" (*Id.*), and that Prochaska had dealt with Merrill Lynch, at least to the extent of establishing a § 401(k) benefit plan through the firm. Viewed in the light most favorable to the plaintiff, these additional allegations are sufficient to support the allegation of apparent authority. *Cf. Gomez v. Pima County,* 426 F.Supp. 816, 820 (D.Ariz.1976): "Unsupported conclusions are not taken as true, but reasonable conclusions drawn from the plaintiff's description of the facts are taken as true." Accordingly, the defendant's motion to dismiss the common law fraud claim will be denied.

## III. CONCLUSION

For the reasons set out above, the Court finds that the motion to dismiss (Filing No. 26) should be granted for each of plaintiff's claims allegedly involving violation of federal and state securities laws (the First, Second, Fourth and Fifth Claims), and will be granted for plaintiff's claim involving the Racketeer Influenced and Corrupt Organization Act (18 U.S.C. § 1961 *et seq.*) (Third Claim).

The motion to dismiss will be denied as to the plaintiff's claim based upon common fraud. (Sixth Claim).

The motion to make more definite and certain will be denied.

A separate order in accordance with this opinion will be issued this date.

## ORDER

IN ACCORDANCE with the Memorandum Opinion entered this date in the above-titled action, the Court will grant in part and deny in part the motion by defendant Merrill Lynch Pierce Fenner & Smith, Inc. to dismiss and/or to make more definite and certain (Filing No. 26). The Court will grant the motion to dismiss as to the plaintiff's claims involving state and federal securities laws (the First, Second, Fourth and Fifth Claims) and as to the plaintiff's claim involving the Racketeer Influenced and Corrupt Organizations Act ("RICO") (the Third Claim); the motion will be denied as to the plaintiff's claim based upon common law fraud (the Sixth Claim).

The motion to make more definite and certain will be denied. Accordingly,

IT IS ORDERED that

(1) the plaintiff's claims involving state and federal securities laws (the First, Second, Fourth and Fifth Claims) are dismissed;

(2) the plaintiff's claim involving the Racketeer Influenced and Corrupt Organizations Act ("RICO") (the Third Claim) is dismissed;

(3) the motion to dismiss plaintiff's claim based upon common law fraud (the Sixth Claim) is denied; and

(4) the motion to make more definite and certain is denied.